**COALITION FOR CANYON PRESER-VATION, a Montana non-profit corporation, and Wildlands Center for Preventing Roads, a Montana non-profit corporation, Plaintiffs,**

v.

**Rodney E. SLATER, in his capacity as Secretary of the Department of Transportation; James N. Hall, in his capacity as Division Engineer for Western Federal Division, Federal Highway Administration; Bruce Babbitt, in his capacity as Secretary of the Department of the Interior; David A. Mihalic, in his capacity as Superintendent of Glacier National Park Service, Defendants.**

No. CV98–84–M–DWM.

United States District Court,
D. Montana.

Jan. 19, 1999.

Susan P. Roy, Garlington, Lohn & Robinson, PLLP, Missoula, MT, Matthew O. Clifford, Missoula, MT, for Coalition for Canyon Preservation, Wildlands Center for Preventing Roads.

William W. Mercer, Missoula, MT, for Rodney E. Slater, James N. Hall, Bruce Babbitt, David A. Mihalic.

## ORDER

MOLLOY, District Judge.

### I. Background

This case involves a challenge to a decision by the National Park Service (NPS) to construct a parking lot on the east side of the Going to the Sun Road (GTSR) at the Avalanche Creek area of Glacier National Park. The NPS issued an Environmental Assessment (EA) in April of 1996 for the project. A little over one year later, the service issued a Finding of No Significant Impact (FONSI) in July of 1997. The Coalition seek a declaratory judgment that defendants have violated the National Environmental Policy Act (NEPA) and the Department of Transportation Act. The Coalition also wants an injunction barring defendants from construction of the proposed parking lot and access road unless and until they have complied with National Environmental Policy Act.

I issued a Temporary Restraining Order on June 19, 1998 enjoining all governmental entities and contractors involved with the project from implementing the decision or engaging in any tree removal or site preparation for the project. Thereafter, the parties filed cross motions for Summary Judgment. A hearing on the motions was conducted on December 11, 1998.

In considering what is contemplated both by the proposed project and the purposes of the environmental laws in question the historical stage needs to be set. As is more fully set forth below, the area of this project has some vegetation, not all of course, that existed in the renaissance period. Some of the trees involved in the area existed shortly after Columbus landed in America. They stem from the time of Machiavelli and the Mona Lisa. They are a part of the crown jewel of national parks, parts that should not be dealt with except in precise conformance with congressional mandate as manifested in the National Environmental Protection Act.

For the reasons sets forth below, I am going to grant the injunctive relief the Coalition seeks.

## II. The Environmental Assessment

### A. Avalanche Creek

The Avalanche Creek Area is located at the confluence of Avalanche and McDonald Creeks several miles upstream of McDonald Lake adjacent to the Going to the Sun Road (GTSR). Currently, the east side of the Going to the Sun Road in the area contains a campground. It has an asphalt and handicapped accessible boardwalk through the Trail of the Cedars. It is the trailhead for the two mile hike to Avalanche Lake. The

Trail of the Cedars and Avalanche Lake are both popular with Glacier visitors.

The west side of the Going to the Sun Road (toward McDonald Creek) in the Avalanche area has a 12 table picnic area, restrooms, and twenty parking spaces that abut the southbound lane of traffic of the Going to the Sun Road. Because the Trail of the Cedars and the trailhead to Avalanche Lake are on the east side of the road, and the parking to the west, there is considerable pedestrian traffic across the Going to the Sun Road. Additionally, automobiles create road side parking along both shoulders of the Going to the Sun Road in order to visit the popular area. Some of this parked traffic is illegal.

Responding to the increased visitor use and the perceived need to find a long term solution, the National Park Service conducted and completed an Environmental Assessment (EA) for a parking lot on the east side of Going to the Sun Road in 1984. The parking problem was also considered in a Transportation Plan in 1990, that recommended implementing the 1984 plan. The lack of funding meant no action was taken on the 1984 plan.

Finding a solution for the congestion in the Avalanche Creek area was revisited by the National Park Service in 1995–1996. That consideration culminated in the Environmental Assessment and FONSI which are the subject of this case. Because the proposals from 1984 and 1990 were never acted on, the Environmental Assessment that is the subject of this action must stand alone. The Environmental Assessment resulted in the designation of a preferred alternative by the National Park Service which calls for a parking lot on the east side of Going to the Sun Road in the Avalanche Creek area. The Coalition charges that too much is at stake to go forward without benefit of a full blown Environmental Impact Statement.

### III. Tree Removal

The heart of the controversy is the impact the parking lot might have on the vegetation at the site where the proposed alternative is to be constructed. It is a forest classified as cedar-devil's club habitat with trees dating to the year 1517. It is an area with vegetation that the Environmental Assessment. admits is rare and vulnerable to extinction. The cedar-devil's club habitat in the Avalanche Creek area is the largest in Montana. It is significant in other ways because it marks the eastern-most location of cedar-devil's club habitat in the North American continent. Tree species are numerous, but are dominated by cedar and hemlock. Many of the trees are greater than 40 inches diameter at breast height (dbh).

In considering the location of the proposed parking lot development in 1994, the Assistant Superintendent of Glacier National Park told his Division chiefs that the parking facility had to be built on the west side of Going to the Sun Road due to the "potential for unacceptable resource and visitor experience impacts on the east side of the Going to the Sun Road." (AR 98). The Division chiefs were responsible for developing the Avalanche plan.

The Draft Environmental Assessment supporting the current proposal characterized the effects of development of the parking facility as follows: "Further permanent loss of this rare and unique habitat, whether it be mature or successional forest, constitutes a long-term significant impact." (AR 196). Curiously, the Final Environmental Assessment omitted this language, but did note that the habitat "is an extremely significant resource due to its age, rarity (and) biogeographic uniqueness." (AR 297). The language of the draft implies the need for an Environmental Impact Statement while the final language is somewhat less demanding but it too implies the need for an EIS to consider the project's impact on an extremely significant resource.

As part of the Environmental Assessment, a Park Service expert stated that plans to increase parking would result in impacts which "are significant in light of the cumulative impacts that have occurred and the extreme rarity of the habitat involved." (AR 92). Public comment on the Environmental Assessment also focused on the anticipated removal of trees from the old-growth forest to accommodate the parking lot. The public comment was nearly universally against the proposed parking lot.

Additionally, the estimate of trees which were slated for removal was underestimated

by the National Park Service in the Environmental Assessment and the FONSI. (AR 579–578). After formally awarding the contract, the Environmental Assessment Interdisciplinary Team Captain admitted that the FONSI was based on a serious discrepancy and that "the down side of this is that we will be cutting more trees than we have stated in our FONSI last July by a significant amount." (AR 600).

The July 1997 FONSI states that only 9 trees greater than 12″ dbh would be removed during construction of the parking lot. The National Park Service estimate in the revised data suggests that the actual number is 47 trees, a five-fold increase. Moreover, additional "hazard trees", those capable of falling into the parking lot and thereby posing threats to visitor safety, would need to be removed in future years. (AR 259). Estimates of the number of hazard trees at risk is close to 200. The National Park Service does not dispute that estimate. The Service admits that hazard tree removal is foreseeable and "could significantly increase the number of large mature trees removed as a result of the new Avalanche parking area." (AR 540)

The Administrative Record is replete with references to significant impacts that would be caused by the preferred alternative, and yet the National Park Service issued a Finding of No Significant Impact. The categorical findings of significant impact on the wealth of this biologically rare and diverse area is incongruous with the Finding of No Significant Impact.

## IV. NEPA and the Standard of Review

■ The National Environmental Policy Act (NEPA) requires agencies to prepare an Environmental Impact Statement (EIS) for each "major Federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The policy behind NEPA is "to ensure that an agency has at its disposal all relevant information about environmental impacts before the agency embarks on the project." *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1356 (9th Cir.1994).

■ An Environmental Assessment (EA) is a first step under NEPA to determine whether or not projected impacts of a project may be "significant." 40 C.F.R. § 1501.2. "Based on the significance determination made in the EA, the agency must then prepare an EIS or a FONSI." *Price Rd. Neighbor. Ass'n v. U.S. Dept. of Transp.*, 113 F.3d 1505, 1509 (9th Cir.1997). Here, the National Park Service made a determination of no "significant impact"; and issued a FONSI. A Finding of No Significant Impact is reviewed under the arbitrary and capricious standard. *Neighbors of Cuddy Mountain v. U.S. Forest Service*, 137 F.3d 1372, 1381 (9th Cir.1998). This standard requires that the "court must ensure that the agency has taken a 'hard look' at the environmental consequences of its proposed action." *Oregon Natural Resources Council v. Lowe*, 109 F.3d 521, 526 (9th Cir.1997).

■ Under the arbitrary and capricious standard, the scope of the review is narrow, *In re Transcon Lines*, 89 F.3d 559, 563 (9th Cir.1996), but a court may reverse an agency decision when it offers an explanation for its decision that runs counter to the evidence before the agency. *Southwest Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1448 (9th Cir.1996).

■ In reviewing agency decisions not to prepare an Environmental Impact Statement, the inquiry by the district court centers on the reasonableness of the Finding of No Significant Impacts. "If substantial questions are raised regarding whether the proposed action may have a significant effect on the human environment, a decision not to prepare an Environmental Impact Statement is unreasonable." *Save the Yaak Committee v. Block*, 840 F.2d 714, 717 (9th Cir.1988) (original emphasis).

■ Agencies may reach a FONSI if mitigation measures are proposed that directly address the impacts identified in the Environmental Assessment. *Friends of the Payette v. Horseshoe Bend Hydroelectric Co.*, 988 F.2d 989, 993 (9th Cir.1993). Here, the National Park Service proposes to remove the picnic area on the west side of Going to the Sun Road to allow for restoration of the habitat there. It then argues that this undertaking mitigates the impacts that will re-

sult from constructing the parking lot on the east side of the road. However, the Environmental Assessment is deficient in yet another way. There is insufficient scientific analysis that the area to the west will regenerate, or that its regeneration is sufficient mitigation to the loss of the habitat to the east. The National Park Service conclusion that it will regenerate is speculative. Finally, there is no dispute that regeneration, if successful, would take centuries. The measure of mitigation would be nearly half of the next millennium.

██ Mitigation efforts must be sufficiently detailed to demonstrate that environmental impacts have been addressed in a meaningful fashion. *Cuddy Mountain*, 137 F.3d at 1380 (9th Cir.1998). An agency's "perfunctory description of mitigating measures is inconsistent with the 'hard look' it is required to render under NEPA." *Id.* The mitigation resolution here proposed does not meet the test.

## V. Plaintiff's 4(f) Claim

Plaintiff brings a second claim under the Federal Aid Highway Act, 23 U.S.C. § 138, and the Department of Transportation Act, 49 U.S.C. § 303(3), which are collectively referred to as "Section 4(f)". Section 4(f) prohibits the expenditure of funds for a "transportation project (other than any project for a park road or parkway under section 204 of Title 23) requiring the use of publicly owned land of a public park" unless the Secretary of Transportation determines that there are no feasible alternatives and that all possible mitigation efforts are made.

In its response brief, the United States argues that Section 4(f) does not apply because the project here falls within the exception of "park road or parkway" under section 204(h). Both sides agreed at oral argument that an injunction and a finding that the National Park Service violated the National Environmental Policy Act would be dispositive of the case, and the Court need not reach the 4(f) claim. Because I believe an Environmental Impact Statement is required based on the administrative record in this case, I do not decide the 4(f) claim.

## VI. Conclusion

An Environmental Assessment means there will be either a FONSI or the preparation of an Environmental Impact Statement. A FONSI issued by an agency in conjunction with an EA should describe why the proposed action will not have a significant impact, and it relies on the Environmental Assessment's scientific analysis and data as its informed basis and justification. If the agency finds that the proposal may significantly impact the environment, the National Environmental Policy Act requires that an Environmental Impact Statement must be prepared. 40 C.F.R. § 1501.4.

A hard look in this case shows the FONSI is not supported by the Administrative Record of this Environmental Assessment. The Administrative Record repeatedly shows that tree removal and other impacts are significant. Moreover, the type of mitigation listed by the National Park Service lacks the scientific analysis and supporting data to constitute sufficient mitigation to support a FONSI.

██ The Park Service's own documents demonstrate and show the significance of the impacts of the proposal. The Finding of No Significant Impact runs counter to the facts and language of numerous references in the Administrative Record. The Administrative Record raises substantial questions that this proposal may have significant impacts on the environment. Consequently, the lack of an Environmental Impact Statement is unreasonable as a matter of law. In ignoring the repeated references in the Administrative Record about the significance of the proposal's impacts, the National Park Service's decision not to perform an Environmental Impact Statement is arbitrary and capricious.

Both parties seek summary judgment. Summary judgment is appropriate when no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law. Summary judgment is an appropriate vehicle to obtain a declaratory judgment. Fed.R.Civ.P. 56(a).

Plaintiff also seeks an injunction, and the basis for injunctive relief is irreparable injury and inadequacy of legal remedies. *Amoco*

*Production Co. v. Village of Gambell,* 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). Nothing in the National Environmental Policy Act indicates that Congress intended to restrict a court's equitable jurisdiction. *Northern Cheyenne Tribe v. Hodel,* 842 F.2d 224, 228 (9th Cir.1988).

Wherefore, IT IS HEREBY ORDERED

1) that plaintiffs' motion for summary judgment on their claim that defendant violated the National Environmental Policy Act, 42 U.S.C. § 4321, is GRANTED (Doc. # 15);

2) that defendants' motion for summary judgment finding the FONSI meets factual and legal requirements is DENIED (Doc. # 20);

3) that plaintiffs' motion for summary judgment on their Section 4(f) claim is moot (Doc. # 15).

IT IS FURTHER ORDERED that the United States Department of Interior and Federal Highway Administration and all persons acting in concert with them, including contractors, are enjoined from implementing the FONSI/RD and further enjoined from authorizing any tree removal or other site preparation in connection with the road access and parking lot at Avalanche Campground, Glacier National Park until such time as an Environmental Impact Statement has been completed in conformance with the National Environmental Protection Act.

IT IS FURTHER ORDERED that the Court's temporary restraining order in this matter dated June 12, 1998 is hereby dissolved;

IT IS FURTHER ORDERED

1) that plaintiffs are awarded costs and reasonable attorney's fees in an amount to be determined later by the Court; and

2) that plaintiffs shall submit a detailed statement of attorney's fees and costs for this action no later than February 15, 1999.